UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
KLAUS DIETRICH,

                                Plaintiff,

     - against -                                 **OPINION & ORDER**

COUNTY OF ORANGE, CARL E. DUBOIS as        No. 19-CV-10485 (CS)
SHERIFF, in his official capacity, TEVIN
JOHNSON, and CORRECTION OFFICER
MICHAEL ROMAN,

                                Defendants.
------------------------------------------------------------x

Appearances:

James Harris
Sobo & Sobo, LLP
Middletown, New York
*Counsel for Plaintiff*

Karen Edelman-Reyes
Senior Assistant County Attorney
Orange County Attorney's Office
Goshen, New York
*Counsel for Defendants County of Orange, DuBois, and Roman*

Seibel, J.

       Before the Court is the motion to dismiss of Defendants County of Orange, Sheriff Carl

E. DuBois, and Correction Officer Michael Roman (collectively, the "County Defendants").

(Doc. 18.)  For the following reasons, the motion is GRANTED.

**I.     BACKGROUND**

       I accept as true the facts, but not the conclusions, set forth in Plaintiff's Amended

Complaint.  (Doc. 17 ("AC").)  Plaintiff Klaus Dietrich was formerly incarcerated at the Orange

County Correctional Facility.  (AC ¶ 5.)  On August 13, 2018, Plaintiff and Defendant Tevin

Johnson, a fellow inmate, were working in the prison kitchen when Johnson attacked Plaintiff, severely injuring Plaintiff's face. (*Id.* ¶ 20.) At the time of the incident, no one was staffing the guard booth that monitored the kitchen, and the County and Roman "did nothing to prevent the assault." (*Id.* ¶¶ 20, 22.)

Plaintiff alleges that the County and Roman were aware that placing Johnson unsupervised in the kitchen would pose a substantial risk of harm to Plaintiff because "Johnson was known as a violent offender and had instigated fights with other inmates" and "a number of assaults" had previously occurred in the kitchen, where inmates have "more freedom to move and interact with each other than they otherwise would." (*Id.* ¶¶ 12, 17-19.) Additionally, Plaintiff alleges that the County and Roman "demonstrated deliberate indifference to a substantial risk of serious harm to Plaintiff in failing to provide supervision in the kitchen" and that the County and DuBois's failure to "properly select, train, supervise, promote and discipline correction officers constitutes gross and deliberate indifference to unconstitutional conduct by those officers." (*Id.* ¶¶ 20, 35.)

On November 13, 2019, Plaintiff filed suit against Johnson for battery and against the County Defendants for violations of the federal and state constitutional prohibitions against cruel and unusual punishment. (Doc. 12.) The County Defendants filed a letter in contemplation of a motion to dismiss (to which Plaintiff failed to respond as ordered), and the Court held a pre-motion conference on December 30, at which the Court granted Plaintiff leave to amend his complaint. (*See* Docs. 14, 16; Minute Entry dated Dec. 30, 2019.) Plaintiff filed his Amended Complaint on January 28, 2020, (Doc. 17), and the instant motion followed, (Doc. 18).

## II.     LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (alteration, citations, and internal quotation marks omitted). While Federal Rule of Civil Procedure 8 "marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, . . . it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 678-79.

In considering whether a complaint states a claim upon which relief can be granted, the court "begin[s] by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth," and then determines whether the remaining well-pleaded factual allegations, accepted as true, "plausibly give rise to an entitlement to relief." *Id.* at 679. Deciding whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'shown' – 'that the pleader is entitled to relief.'" *Id.* (alteration omitted) (quoting Fed. R. Civ. P. 8(a)(2)).

3

### III.    DISCUSSION

The County Defendants argue that Plaintiff's claims against them must be dismissed on several grounds, primarily: (1) Plaintiff's official capacity claims and the claims against the County are redundant; (2) Plaintiff has failed to state an Eighth Amendment violation; and (3) even if Plaintiff had stated a constitutional violation, he has failed to adequately allege municipal liability. (Doc. 20 ("Ds' Mem.") at 4-5, 8-20.) They also raise several arguments why Plaintiff's state law claims should be dismissed. (*Id.* at 20-24.)

#### A.    Official Capacity Claims

As an initial matter, Plaintiff brings his claims against DuBois only "in his official capacity," (AC at 1), which Plaintiff concedes "is the functional equivalent of a suit against Orange County," (Doc. 22-1 ("P's Opp.") at 1). Where, as here, the County itself is also a defendant, claims against County officials in their official capacity are redundant and should consequently be dismissed. *See Phillips v. County of Orange*, 894 F. Supp. 2d 345, 384 n.35 (S.D.N.Y. 2012) ("Within the Second Circuit, where a plaintiff names both the municipal entity and an official in his or her official capacity, district courts have consistently dismissed the official capacity claims as redundant.").[1] Plaintiff does not specify whether he is suing Roman in his official or individual capacity, so the Court will consider both, *see Ying Jing Gan v. City of N.Y.*, 996 F.2d 522, 529-30 (2d Cir. 1993) (where complaint is silent as to capacity in which officials are sued and official-capacity claims would be dismissed, it is "appropriate for the court

---

[1] As the County Defendants note, (*see* Ds' Mem. at 5-8), even if Plaintiff had sued DuBois in his individual capacity, Plaintiff's Eighth Amendment claim against him would be dismissed for failure to plead personal involvement, as the only reference in the Amended Complaint to conduct of DuBois is a conclusory allegation that he failed to properly select, train, supervise, promote, and discipline correction officers, *see Davis v. Cheverko*, No. 16-CV-4034, 2017 WL 6397749, at *4 (S.D.N.Y. Dec. 13, 2017).

4

to allow the case to proceed against the officials in their individual capacities"); *Garcia v. Munoz*, No. 94-CV-7940, 1995 WL 498777, at *1 (S.D.N.Y. Aug. 21, 1995) ("Where the complaint leaves doubt as to which capacity the official is being sued in, it is preferable for the court to review both possibilities."), but to the extent that he seeks damages against Roman in his official capacity, those claims are likewise dismissed.

### B.   Eighth Amendment Claims

Plaintiff brings a claim pursuant to 42 U.S.C. § 1983 against the County Defendants for violation of his Eighth Amendment rights based on alleged deliberate indifference to the conditions of his confinement arising from the failure to protect Plaintiff from Johnson's alleged assault.

In accordance with the Eighth Amendment's prohibition of cruel and unusual punishment, prison officials "must take reasonable measures to guarantee the safety of the inmates," and they have a duty to "protect prisoners from violence at the hands of other prisoners. *Farmer v. Brennan*, 511 U.S. 825, 832-33 (1994) (internal quotation marks omitted). But not "every injury suffered by one prisoner at the hands of another . . . translates into constitutional liability for prison officials responsible for the victim's safety." *Id*. at 834.  To state an Eighth Amendment claim based on conditions of confinement, an inmate must allege that "(1) objectively, the deprivation the inmate suffered was sufficiently serious that he was denied the minimal civilized measure of life's necessities, and (2) subjectively, the defendant official acted with a sufficiently culpable state of mind, such as deliberate indifference to inmate health or safety." *Walker v. Schult*, 717 F.3d 119, 125 (2d Cir. 2013) (internal quotation marks and alteration omitted).

The objective element requires a plaintiff to "show that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834.  A plaintiff may show a substantial risk of harm from either "a specific assailant" or "a more general risk of harm due to the conditions at the time of the attack," *Hurst v. Perez*, No. 15-CV-4703, 2017 WL 187532, at *2 (S.D.N.Y. Jan. 13, 2017), such as where "a substantial risk of inmate attacks was longstanding, pervasive, [or] well-documented," *Farmer*, 511 U.S. at 842.  Plaintiff has failed to plausibly allege either.

Plaintiff has failed to allege that there was a substantial risk of harm from his specific assailant, Johnson.  "Courts may find a substantial risk of serious harm where there is evidence of a previous altercation between a plaintiff and his attacker, coupled with a complaint by the plaintiff regarding the altercation or a request by the plaintiff to be separated from the attacker." *Mays v. Falu*, No. 18-CV-6145, 2019 WL 6619330, at *7 (S.D.N.Y. Dec. 5, 2019) (internal quotation marks and alterations omitted).  Additionally, courts have looked to the existence (or lack thereof) of no-contact orders to determine whether a substantial risk of harm existed.  *Id.* at *8.  Here, Plaintiff has not alleged any previous animosity between himself and Johnson, and he has therefore failed to allege that he faced a substantial risk of harm from being placed with him. *See James v. Orange Cnty. Corr. Facility*, No. 09-CV-7226, 2011 WL 5834855, at *6 (S.D.N.Y. Nov. 18, 2011) (dismissing failure-to-protect claim where there was "no evidence of any history of animosity sufficient to establish a risk of serious harm prior to Plaintiff being assaulted"). Although Plaintiff alleges that "Johnson was a dangerous and combative inmate who was a gang member" and "Johnson was known as a violent offender and had instigated fights with other inmates," (AC ¶¶ 8, 17), such conclusory allegations alone are insufficient to plead the existence of a substantial risk of harm.  *See Smolen v. Brown*, No. 18-CV-7621, 2020 WL 1233762, at *4

6

(S.D.N.Y. Mar. 13, 2020) (where no notice of prior altercations or tension between plaintiff and inmate-assailant, bare allegation that assailant was known to be violent is insufficient to sustain failure-to-protect claim); *Thomas v. Demeo*, No. 15-CV-9559, 2017 WL 3726759, at *8 (S.D.N.Y. Aug. 28, 2017) (dismissing failure-to-protect claim where "Plaintiff has merely alleged that he was celled with an inmate who was known to be violent").[2]

Plaintiff has also failed to allege a more general risk of harm due to the conditions in the kitchen at the time of the attack. Plaintiff alleges that the kitchen "posed a special and unique danger in that prisoners had more freedom to move and interact with each other than they otherwise would" and was (on information and belief) "the situs of a number of assaults of inmates." (AC ¶¶ 12, 18.) But Plaintiff alleges only one previous attack in the kitchen on an unspecified date, in which an inmate "was beaten in the kitchen by several inmates and made complaints of the beating." (*Id.* ¶ 13.) This falls far short of the "longstanding, pervasive, well-documented history of similar attacks" necessary to state a failure-to-protect claim based on a general risk of harm. *Constant v. Prack*, No. 16-CV-3985, 2019 WL 3287818, at *7 (S.D.N.Y. July 19, 2019).

Even if Plaintiff were able to satisfy the objective element, his Eighth Amendment claims would fail because he has not plausibly alleged that any of the County Defendants subjectively acted with a sufficiently culpable state of mind. This subjective element requires "more than

---

[2] Not only is it insufficient that Johnson was known to be violent, but the allegations that Johnson had previously been violent and that Defendants were aware of it are devoid of factual support. *See Sharpe v. City of N.Y.*, 560 F. App'x 78, 80 (2d Cir. 2014) (summary order) (disregarding allegations of knowledge on defendants' parts as "wholly conclusory" where unsupported by factual allegations about how or why defendants knew alleged fact); *Whiteside v. Hover-Davis, Inc.*, No. 19-CV-6026, 2020 WL 979785, at *4 (W.D.N.Y. Feb. 28, 2020) ("A plaintiff cannot avoid the necessity of pleading a plausible claim supported by factual allegations merely by asserting statements 'upon information and belief' without explaining the basis for the belief."), *appeal filed*, No. 20-798 (2d Cir. Mar. 5, 2020).

mere negligence"; instead, "the prison official must know of, and disregard, an excessive risk to inmate health or safety." *Walker*, 717 F.3d at 125 (internal quotation marks omitted). "For a plaintiff to state a claim for deliberate indifference based on a failure to protect him, he must allege that corrections officers knew of and disregarded a particular risk to his safety." *Parris v. N.Y. State Dep't Corr. Servs.*, 947 F. Supp. 2d 354, 363 (S.D.N.Y. 2013). In general, this requires a plaintiff to "allege that the defendants knew of a prior altercation between the plaintiff and his attacker, or of threats that had been made against the plaintiff. In the absence of such allegations, prison officials are not liable for any harm caused by inmate-on-inmate violence." *Thomas*, 2017 WL 3726759, at *8 (internal quotation marks and citation omitted). "A plaintiff may also state a claim for deliberate indifference based on a failure to protect him against a general risk of harm to all inmates at the facility" by alleging "that the defendants knew of a history of prior inmate-on-inmate attacks similar to the one suffered by the plaintiff and that the measures they should have taken in response to such prior attacks would have prevented the attack on the plaintiff." *Parris*, 947 F. Supp. 2d at 363; *see Coronado v. Goord*, No. 99-CV-1674, 2000 WL 1372834, at *6 (S.D.N.Y. Sept. 25, 2000) (further describing the elements necessary to state such a claim).

Plaintiff has failed to allege that any of the County Defendants knew of and disregarded a particular risk to his safety, either from Johnson specifically or in the kitchen generally. Plaintiff alleges in conclusory fashion that Johnson was "dangerous" and "violent," that Johnson "instigated fights with other inmates," and that the County and Roman knew that Johnson "had a predilection for violence." (AC ¶¶ 8, 17, 21). But Plaintiff provides no specifics that might provide a factual basis for those bare allegations, *see Iqbal*, 556 U.S. at 678 (naked assertions devoid of factual enhancement do not suffice to state claim), and he does not allege any history

8

of animosity (let alone violence) between himself and Johnson that would have put the County Defendants on notice that Johnson posed a risk to Plaintiff, *see Thomas*, 2017 WL 3726759, at \*8 (dismissing failure-to-protect claim "in the absence of *any* history of violence between [the attacker] and Plaintiff") (emphasis in original). It is not enough to simply allege that Johnson was generally dangerous because "inmates in federal prison are often incarcerated specifically because of some record of violence," and "a failure to protect claim requires more than a showing that the correctional facility contains dangerous conditions." *Id.* (internal quotation marks omitted).

Similarly, Plaintiff has failed to allege that the kitchen posed a general risk of harm to all inmates at the facility because he has not alleged that any of the County Defendants knew of numerous other inmate-on-inmate attacks in the kitchen similar to the one suffered by Plaintiff or that the measures that should have been taken in response to such prior attacks would have prevented the attack on Plaintiff. *See Parris*, 947 F. Supp. 2d at 363; *Coronado*, 2000 WL 1372834, at \*6. Although Plaintiff alleges that another inmate (on some unspecified date) "was beaten in the kitchen by several inmates and made complaints of the beating" to "the Orange County Sheriff and the Correction Officers," (AC ¶¶ 13-14), Plaintiff does not allege any similarity between that altercation and the one at bar that would put the County Defendants on notice that Plaintiff faced a similar risk. *See Coronado*, 2000 WL 1372834, at \*6 (dismissing for failure to plead sufficient facts to determine whether attacks were similar).[3] And as explained above, alleging a single prior incident in the kitchen does not come close to alleging the "longstanding, pervasive, well-documented history of similar attacks" that would be necessary to

---

[3] Plaintiff does not even allege that the guard booth in the kitchen area was unoccupied at the time of the previous assault.

9

state a failure-to-protect claim based on a general risk of harm. *See Constant*, 2019 WL 3287818, at *7. Furthermore, although Plaintiff alleges that a guard booth in the kitchen was unstaffed at the time he was assaulted, (AC ¶ 20), he does not plausibly allege that staffing the guard booth would have prevented the surprise attack. *See Coronado*, 2000 WL 1372834, at *6 (plaintiff failed to allege that installing metal detectors would have prevented attack); *see also Morgan v. City of N.Y.*, No. 12-CV-282, 2014 WL 3952917, at *3 (S.D.N.Y. Aug. 12, 2014) (no deliberate indifference where surprise attack occurred while officers away from posts). The allegation that the guard booth was unstaffed, unaccompanied by facts plausibly showing that any of the County Defendants understood that that fact presented a particular risk to Plaintiff's safety, is a "claim of mere negligence," which is "insufficient to allege a violation of the Eighth Amendment." *Parris*, 947 F. Supp. 2d at 364 (leaving security posts unmanned and not noticing attack did not suffice for deliberate indifference); *see Houston v. Nassau County*, No. 08-CV-882, 2009 WL 605178, at *4 (E.D.N.Y. Mar. 6, 2009) (that defendants left guard booth unmanned, allowing another inmate to assault plaintiff, alleged only negligence, not deliberate indifference).

Accordingly, Plaintiff has failed to state a claim for deliberate indifference to the conditions of his confinement arising from the failure to protect Plaintiff from Johnson's alleged assault, and therefore Plaintiff's Eighth Amendment claims against the County Defendants are DISMISSED.

### C. **Municipal Liability**

The County Defendants argue in the alternative that even if Plaintiff were able to state a constitutional violation, he has failed to allege *Monell* liability against the County. (Ds' Mem. at 14-20.) Although the Court need not address this issue because Plaintiff has failed to plead an

10

underlying constitutional violation, *see Segal v. City of N.Y.*, 459 F.3d 207, 219 (2d Cir. 2006), I note that even if Plaintiff had, his theory of municipal liability would fail.

"To hold a [municipal defendant] liable under § 1983 for the unconstitutional actions of its employees, a plaintiff is required to plead and prove three elements:  (1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right." *Wray v. City of N.Y.*, 490 F.3d 189, 195 (2d Cir. 2007) (alteration and internal quotation marks omitted).  To allege such a policy or custom, the plaintiff may assert

> (1) the existence of a formal policy officially endorsed by the municipality; (2) actions taken or decisions made by municipal officials with final decision making authority, which caused the alleged violation of plaintiff's civil rights; (3) a practice so persistent and widespread that it constitutes a custom of which constructive knowledge can be implied on the part of the policymaking officials; or (4) a failure by policymakers to properly train or supervise their subordinates, amounting to deliberate indifference to the rights of those who come in contact with the municipal employees.

*Betts v. Shearman*, No. 12-CV-3195, 2013 WL 311124, at *15 (S.D.N.Y. Jan. 24, 2013) (internal quotation marks omitted), *aff'd*, 751 F.3d 78 (2d Cir. 2014).  "[M]ere allegations of a municipal custom, a practice of tolerating official misconduct, or inadequate training and/or supervision are insufficient to demonstrate the existence of such a custom unless supported by factual details." *Tieman v. City of Newburgh*, No. 13-CV-4178, 2015 WL 1379652, at *13 (S.D.N.Y. Mar. 26, 2015).  Additionally, "a single incident alleged in a complaint, especially if it involved only actors below the policy-making level, does not suffice to show a municipal policy." *DeCarlo v. Fry*, 141 F.3d 56, 61 (2d Cir. 1998) (internal quotation marks omitted).  "*Monell* liability may spring from a single violation only where the conduct causing the violation was undertaken pursuant to a municipality-wide custom, practice, or procedure." *DeMichele v. City of N.Y.*, No. 09-CV-9334, 2012 WL 4354763, at *20 (S.D.N.Y. Sept. 24, 2012).

11

Plaintiff asserts two municipal policies or customs that allegedly violated his constitutional rights.  First, he asserts that the County had a policy or custom of failing to assign supervisors.  (*See* AC ¶ 33.)[4]  But Plaintiff does not allege any facts to support this theory.  And although Plaintiff alleges (on information and belief) that the jail was understaffed and the kitchen guard booth was routinely unmanned, (*id.* ¶ 16), he alleges no facts regarding the custom or policy of assigning supervisors to the kitchen.[5]  Instead, he points only to his own experience of being unsupervised in the kitchen on the date of the incident.  Merely alleging that the kitchen was not supervised during one attack is insufficient to allege a municipal policy.  *See City of Oklahoma City v. Tuttle*, 471 U.S. 808, 823-24 (1985) ("Proof of a single incident of unconstitutional activity is not sufficient to impose liability under *Monell*.").  Nor does it constitute the "pattern of similar constitutional violations" that is ordinarily necessary to demonstrate deliberate indifference.  *Connick v. Thompson*, 563 U.S. 51, 62 (2011).  "While a court may not apply a heightened pleading standard to *Monell* claims, 'boilerplate' conclusions as to municipal liability will not suffice, even at this early stage of the litigation."  *Betts*, 2013 WL 311124, at *15 (citation omitted); *see Zahra v. Town of Southold*, 48 F.3d 674, 685 (2d Cir. 1995) ("[T]he mere assertion that a municipality has such a custom or policy is insufficient in the absence of allegations of fact tending to support, at least circumstantially, such an inference.") (internal quotation marks and alteration omitted); *Guerrero v. City of N.Y.*, No. 12-CV-2916,

---

[4] Paragraph 33 of the Amended Complaint reads in full:  "The Policy or ubiquitous custom and practice of failing to assign supervions[.]"  The Court assumes the last word is intended to be "supervisors" or "supervision."

[5] While Plaintiff alleges that the booth near the kitchen was regularly unmanned, and "this exposed the inmates to cruel and unusual punishment in the for most [*sic*] assault from other inmates," (AC ¶ 16), he does not allege that officers never patrolled the kitchen area.  Moreover, the Court is unaware of any constitutional requirement that all inmates be in view of an officer at all times – a requirement that obviously is impracticable.

12

2013 WL 673872, at *2 (S.D.N.Y. Feb. 25, 2013) ("[B]oilerplate claims do not rise to the level of plausibility required to state a viable *Monell* claim.") (internal quotation marks omitted). Consequently, Plaintiff has failed to plausibly allege that the County had a policy or practice of failing to assign supervisors.

Second, Plaintiff argues that the County's failure "to properly select, train, supervise, promote and discipline correction officers constitutes gross and deliberate indifference to unconstitutional conduct by those officers." (AC ¶ 35.) As the Supreme Court has instructed, "[a] municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Connick*, 563 U.S. at 61. The inadequacy of training may serve as the basis for § 1983 liability only where the failure to train amounts to "deliberate indifference to the rights of those who come in contact with the municipal employees." *Betts*, 2013 WL 311124, at *15 (internal quotation marks omitted). In alleging a failure to train theory, therefore, it is not enough for Plaintiff to allege "that an injury or accident could have been avoided if an officer had had better or more training." *City of Canton v. Harris*, 489 U.S. 378, 391 (1989). Instead, a successful failure to train claim "usually requires proof of a 'pattern of similar constitutional violations by untrained employees.'" *Miller v. County of Nassau*, No. 10-CV-3358, 2013 WL 1172833, at *8 (E.D.N.Y. Mar. 19, 2013) (quoting *Connick*, 563 U.S. at 62). There is also a narrow category of cases in which "the unconstitutional consequences of failing to train could be so patently obvious that a city could be liable under § 1983 without proof of a pre-existing pattern of violations." *Connick*, 563 U.S. at 64.

Here, Plaintiff alleges one prior attack in the kitchen on an unspecified date by unspecified assailants. (*See* AC ¶ 13.) But Plaintiff does not allege that the kitchen was not supervised when that attack occurred and thus has not alleged a "pattern of similar constitutional

13

violations by untrained employees," *Connick* 563 U.S. at 62, and the "single, detached incident of misconduct" alleged in the Amended Complaint "in no way suggests a deliberate choice by municipal policymakers to turn a blind eye to unconstitutional conduct," *Abreu v. City of N.Y.*, 657 F. Supp. 2d 357, 361 (E.D.N.Y. 2009); *see Corbett v. City of N.Y.*, No. 15-CV-9214, 2016 WL 7429447, at *6 (S.D.N.Y. Dec. 22, 2016) ("The Court will not infer a deficiency in training by speculation based upon a single alleged constitutional violation. . . . [T]o draw such an inference based upon a single allegedly unconstitutional act would be to entertain a claim that falls uncomfortably close to municipal vicarious liability, which is not cognizable under § 1983."). Further, a plaintiff alleging a failure-to-train claim must "identify a specific deficiency in the [defendant's] training program and establish that that deficiency is closely related to the ultimate injury, such that it actually caused the constitutional deprivation." *Wray*, 490 F.3d at 196 (internal quotation marks omitted). Plaintiff has not alleged anything about how jail officers are trained, let alone identified a deficiency that led to his injury. His boilerplate assertions do not suffice to plausibly allege municipal liability based on failure to train. *See Ruiz v. Westchester County*, No. 18-CV-7007, 2020 WL 4340788, at *8 (S.D.N.Y. July 28, 2020) (collecting cases). Accordingly, even if Plaintiff had plausibly alleged an Eighth Amendment violation, his § 1983 claim against the County would fail because he has not plausibly alleged facts that would give rise to municipal liability.

### D.   State Law Claims

In addition to his federal constitutional claims, Plaintiff brings several state constitutional claims against the County Defendants, as well as a state law battery claim against Johnson.[6] (AC ¶¶ 30, 36-37, 40, 42.) The "traditional 'values of judicial economy, convenience, fairness, and

---

[6] The docket contains no indication that Johnson has been served.

14

comity'" weigh in favor of declining to exercise supplemental jurisdiction where all federal law claims are eliminated before trial. *Kolari v. N.Y.-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988)). Having determined that the Amended Complaint fails to state any federal law claims on which relief can be granted, and having considered the factors set forth in *Cohill*, the Court declines to exercise supplemental jurisdiction over Plaintiff's remaining state law causes of action. *See* 28 U.S.C. § 1367(c).

### E.  Leave to Amend

Leave to amend a complaint should be freely given "when justice so requires." Fed. R. Civ. P. 15(a)(2). "[I]t is within the sound discretion of the district court to grant or deny leave to amend." *Kim v. Kimm*, 884 F.3d 98, 105 (2d Cir. 2018) (internal quotation marks omitted). "Leave to amend, though liberally granted, may properly be denied" for "'repeated failure to cure deficiencies by amendments previously allowed'" or "'futility of amendment,'" among other reasons. *Ruotolo v. City of N.Y.*, 514 F.3d 184, 191 (2d Cir. 2008) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

Plaintiff has already amended once, after having the benefit of a pre-motion letter from the County Defendants, (Doc. 14), as well as the Court's observations during the pre-motion conference, (*see* Minute Entry dated Dec. 30, 2019). In general, a plaintiff's failure to fix deficiencies in the previous pleading, after being provided notice of them, is alone sufficient ground to deny leave to amend. *See Nat'l Credit Union Admin. Bd. v. U.S. Bank Nat'l Ass'n*, 898 F.3d 243, 257-58 (2d Cir. 2018) ("When a plaintiff was aware of the deficiencies in his complaint when he first amended, he clearly has no right to a second amendment even if the proposed second amended complaint in fact cures the defects of the first. Simply put, a busy district court need not allow itself to be imposed upon by the presentation of theories *seriatim*.")

(internal quotation marks, alteration, and footnote omitted); *In re Eaton Vance Mut. Funds Fee Litig.*, 380 F. Supp. 2d 222, 242 (S.D.N.Y. 2005) (denying leave to amend because "the plaintiffs have had two opportunities to cure the defects in their complaints, including a procedure through which the plaintiffs were provided notice of defects in the Consolidated Amended Complaint by the defendants and given a chance to amend their Consolidated Amended Complaint," and "plaintiffs have not submitted a proposed amended complaint that would cure these pleading defects"), *aff'd sub nom. Bellikoff v. Eaton Vance Corp.*, 481 F.3d 110, 118 (2d Cir. 2007) (*per curiam*) ("[P]laintiffs were not entitled to an advisory opinion from the Court informing them of the deficiencies in the complaint and then an opportunity to cure those deficiencies.") (internal quotation marks omitted).

Further, although Plaintiff "requests leave to amend the complaint a second time to clarify the County Defendants' policy and indifference," (P's Opp. at 6), he has not suggested what facts he possesses that would cure the deficiencies identified in this opinion.  Accordingly, the Court declines to grant leave to amend.  *See TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 505 (2d Cir. 2014) (plaintiff need not be given leave to amend if he fails to specify how amendment would cure the pleading deficiencies in his complaint); *Gallop v. Cheney*, 642 F.3d 364, 369 (2d Cir. 2011) (district court did not err in dismissing claim with prejudice in absence of any indication plaintiff could or would provide additional allegations leading to different result); *Porat v. Lincoln Towers Cmty. Ass'n*, 464 F.3d 274, 276 (2d Cir. 2006) (*per curiam*) (no abuse of discretion in denying leave to amend where plaintiff's counsel made no showing that complaint's defects could be cured); *see also Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 190 (2d Cir. 2015) (denial of leave to amend would be proper where

"request gives no clue as to how the complaint's defects would be cured") (internal quotation marks omitted).

## IV. CONCLUSION

For the foregoing reasons, the County Defendants' motion to dismiss is GRANTED. Plaintiff's Eighth Amendment claims brought pursuant to § 1983 are dismissed with prejudice, and his state law claims (against both the County Defendants and Johnson) are dismissed without prejudice. The Clerk of Court is respectfully directed to terminate the pending motion, (Doc. 18), and close the case.

**SO ORDERED.**

Dated: September 1, 2020
       White Plains, New York

*Cathy Seibel*
CATHY SEIBEL, U.S.D.J.